Jerry **SHULTS** and J.W. **Phillips,**
**Plaintiffs-Appellants,**

v.

The **STATE OF TEXAS, et al.,**
**Defendants-Appellees.**

No. 84–1876
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

June 10, 1985.

447 (1979); *Block v. Rutherford,* —— U.S. ——, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984).

Mike Aranson, Frank Shor, Dallas, Tex., for plaintiffs-appellants.

Jim Mattox, Atty. Gen., Ann Kraatz, Asst. Atty. Gen., Austin, Tex., for State of Texas.

Kent S. Hofmeister, Dallas, Tex., for Billy D. Prince, Chief of Police, Dallas, Tex.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiffs Jerry Shults and J.W. Phillips filed this declaratory judgment action against the State of Texas and Jack Revill, in his official capacity as Police Chief of the Dallas Police Department,[1] challenging the constitutionality of the forfeiture provi-

sions of the Texas Controlled Substances Act, Tex.Rev.Civ.Stat.Ann. art. 4476–15 §§ 5.03–5.08 (Vernon Supp.1985). The plaintiffs argued that the forfeiture provisions were unconstitutional both on their face and as applied to them. Their chief complaint is that they are denied due process, both under the statute and as it applied to them, because they were allegedly denied a meaningful and timely opportunity to be heard to contest the seizure of their property solely for forfeiture.

After a bench trial, the district court entered a written order and a final judgment against the plaintiffs, holding, inter alia, (1) that their facial challenge was barred by the doctrine of *res judicata* and (2) that the forfeiture provisions, as applied, did not violate the plaintiffs' constitutional rights, in particular their constitutional right to due process of law. The plaintiffs challenge both of these holdings on appeal. Finding no error, we affirm.

### I. *Background*

The plaintiffs own and operate businesses in Dallas, Texas that sell drug paraphernalia, so-called "head shops". In 1981, the Texas legislature amended the Texas Controlled Substances Act (the "Act"), Tex. Rev.Civ.Stat.Ann. art. 4476–15 §§ 1.01 *et seq.*, by adding what are commonly referred to as "drug paraphernalia" provisions. Immediately thereafter, perceiving a threat to their businesses, the present plaintiffs, Shults and Phillips, along with fifty-three other people, filed suit seeking to enjoin enforcement of the new provisions. The plaintiffs argued that the provisions violated their constitutional rights to free speech, due process, and equal protection. The district court denied them a permanent injunction. *Atkins v. Clements,* 529 F.Supp. 735 (N.D.Tex.1981). The plaintiffs filed a timely appeal but later voluntarily dismissed it. (No. 81–1475, 5th Cir., January 6, 1982).

By their present complaint filed in 1982, the plaintiffs Shults and Phillips attacked the constitutionality of the Act's forfeiture

1. Billy Prince, a successor as chief, was substituted for Jack Revill on February 8, 1983.

provisions. They sought injunctive and declaratory relief, complaining of the seizure for confiscation of items from their stores on four occasions between October 29, 1981 and July 26, 1982. In each instance, the objects were seized pursuant to search warrants. No criminal proceedings were filed as a result of the seizures. In each instance, however, the State instituted forfeiture proceedings under the Act within thirty days of the seizure in order to have the items of property seized declared to be forfeited as "drug paraphernalia".

As of the date of the judgment below (August 3, 1984), the forfeiture proceedings against the plaintiff Shults had been heard in October, 1982, with the jury finding adversely to Shults that all items were properly seized as drug paraphernalia; which case was pending on state appeal. The two forfeiture proceedings against the plaintiff Phillips were still pending, but had been set for trial.

Prior to trial in this case, two other events occurred that the plaintiffs claim are highly significant: (1) in mid-1983, the Texas legislature once again amended the Act, and in particular its forfeiture provisions; and (2) shortly thereafter, the Texas Court of Criminal Appeals declared the 1981 amendments to the Act unconstitutional.

At trial, the plaintiffs tried their case on the narrow theory that two particular forfeiture provisions in the Act, §§ 5.05 and 5.07,[2] were unconstitutional on their face (because the provisions failed to provide for a hearing or a trial within thirty days of

seizure) and as applied to them (because of the excessive delays between the time of the seizure and the time of the hearings—estimated to be between 1 to 2½ years). Following trial, the district court rejected the plaintiffs' contentions, for the reasons discussed below, and dismissed the suit. The plaintiffs then appealed.

## II. *The "Facial" Attack*

The district court held that the doctrine of res judicata bars the plaintiffs from arguing that the forfeiture provisions are unconstitutional on their face. The test for determining the applicability of this doctrine is well-settled:

> For a prior judgment to bar a subsequent action, it is firmly established (1) that a prior judgment must have been rendered by a court of competent jurisdiction; (2) that there must have been a final judgment on the merits; (3) that the parties, or those in privity with them, must be identical in both suits; and (4) that the same cause of action must be involved in both suits.

*Jones v. Texas Tech University,* 656 F.2d 1137, 1141 (5th Cir.1981), *quoting Stevenson v. International Paper Company, Mobile, Alabama,* 516 F.2d 103, 108 (5th Cir. 1975). The plaintiffs agree that the first three elements of this test have been satisfied. They contend, however, that the present cause of action is different from the one they instituted in 1981 and that, for this reason, the fourth element of the test has not been satisfied.

2. These two provisions provide, in pertinent part:
   § 5.05 Notification of forfeiture proceedings.
   (a) When any property, other than a controlled substance or raw material is seized, proceedings under this section shall be instituted within 30 days after the seizure and not thereafter.
   (b) The seizing officer shall immediately cause to be filed in the name of the State of Texas with the clerk of the district court ... a notice of the seizure and intended forfeiture.
   § 5.07 Forfeiture hearing.
   (a) An owner of property ... that has been seized shall file a verified answer within 20

days of the mailing of publication of notice of seizure.... If an answer is filed, a time for hearing on forfeiture shall be set within 30 days of filing the answer and notice of the hearing shall be sent to all parties. Tex.Rev.Civ.Stat.Ann. art. 4476–15 §§ 5.05 and 5.07 (Vernon Supp.1985).

The provisions thus require that forfeiture proceedings must be filed within thirty days of the seizure, with immediate notice to the owner. Also, under the statute, the owner is entitled to obtain a hearing within thirty days of his answer, which must be filed within twenty days of notice of the filing of the forfeiture proceedings.

We recently discussed the meaning of the term "same cause of action" in *Nilsen v. City of Moss Point, Mississippi*, 701 F.2d 556 (5th Cir.1983) (en banc). In doing so, we stated:

Various tests have been advanced to determine whether the substance of two actions is the same for res judicata purposes: Is the same right infringed by the same wrong? Would a different judgment obtained in the second action impair rights under the first judgment? Would the same evidence sustain both judgments? This Court has recognized that the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action.

*Id.* at 559, *quoting Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir. 1979). In *Nilsen*, the plaintiff filed successive suits against the City of Moss Point for refusing to hire her as a firefighter. She first sought to recover under 42 U.S.C. § 2000e *et seq.* (Title VII), but the district court entered an adverse judgment against her. She then sought to recover under 42 U.S.C. § 1983. We held that the § 1983 suit involved the same cause of action as the consolidated Title VII suits and was therefore barred, explaining:

[The plaintiff's] claims here are based 'upon the same facts and circumstances as are alleged [in her previous suits]': in a word, upon the same transaction. Moreover, the same right, to be free of intentional sex discrimination in employment, is claimed to have been infringed by the same wrong, that discrimination. The primary right and duty asserted and the primary wrong complained of are the same in each action. Only the legal bases advanced for relief are different.

*Nilsen, supra,* at 559. *See also Fleming v. Travenol Laboratories, Inc.*, 707 F.2d 829, 833 (5th Cir.1983).

**3.** *Compare* 1981 Tex.Sess.Law Serv. Ch. 268, pp. 704–705 (Vernon) *with* 1983 Tex.Sess.Law.Serv. Ch. 425, pp. 2397–2407 (Vernon). The plaintiffs do not deny that the only change worth noting

## A.

The plaintiffs here advance three reasons why this suit involves a different cause of action from the one involved in *Atkins*, the previous suit. The first is that this suit involves a challenge to the constitutionality of the 1983 amendments to the Texas Controlled Substances Act, while *Atkins* involved a challenge to the constitutionality of the 1981 amendments to the Act. As the district court properly noted, however, the forfeiture provisions of the 1983 amendments that the plaintiffs are now challenging, §§ 5.05 and 5.07, are essentially the same as the forfeiture provisions of the 1981 amendments that the plaintiffs challenged in *Atkins*. In fact, apart from minor cosmetic changes in the language of § 5.07,[3] the provisions are identical.

The plaintiffs contend in this suit that §§ 5.05 and 5.07 of the 1983 amendments are unconstitutional because they fail to provide for a hearing within thirty days of seizure. Sections 5.05 and 5.07 of the 1981 amendments also failed to provide for such a hearing. Thus, the primary right asserted (the right to a timely hearing) and the primary wrong complained of (the absence of a timely hearing provision) are the same in both actions. That the pertinent provisions of the 1983 amendments at issue here are not identical in other respects to the pertinent provisions of the 1981 amendments at issue in *Atkins* is irrelevant.

## B.

The plaintiffs' next argument is that this cause of action is different from the previous one because the 1981 amendments at issue in *Atkins* did not legally exist at the time *Atkins* was decided. This argument is inspired by certain language in *Ex Parte Crisp*, 661 S.W.2d 944 (Tex.Crim.App.1983). In that case, which involved a petition for state court habeas corpus relief, the Texas Court of Criminal Appeals declared the

is the new clause in the 1983 amendments providing that drug paraphernalia is not subject to release to lien holders. The plaintiffs, however, have not brought this suit as lien holders.

1981 amendments unconstitutional under the Texas Constitution because the bill by which they were enacted, H.B. 730, contained a defective caption. In discussing the effect of its ruling on the amendments, the court held "that the Controlled Substances Act stands as though H.B. 730 had never been enacted." *Id.* at 948. The plaintiffs here argue, in effect, that the 1981 amendments did not exist when *Atkins* was decided and that *Atkins* should therefore be deemed not to have involved a cause of action at all and certainly not the same cause of action that is at issue in this case.

The Supreme Court rejected a similar argument in *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). The general rule is that "[j]udgments rest[ing] on invalid statutes are commonly entitled to full res judicata effect.... So long as the parties were afforded a fair opportunity to raise the question of validity [in a prior proceeding], the judgment should be honored whether the question was not raised or was raised and resolved incorrectly." 18 C. Wright & A. Miller, *Federal Practice and Procedure*, § 4429 (1981). The plaintiffs do not deny that they could have raised the same challenge in *Atkins* to the validity of the statute that the petitioners successfully made in *Ex Parte Crisp, supra*. Their argument thus fails that, for this reason, the judgment in *Atkins* should not be given full res judicata effect.

### C.

The plaintiffs' final argument regarding the facial invalidity of §§ 5.05 and 5.07 is that in present case the challenge to these two provisions is based on procedural due process, whereas in *Atkins* the challenge was based on substantive due process. Even assuming this to be true, we have frequently stated that a "judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit, not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented." *Jones, supra,* 656 F.2d at 1141. Since the plaintiffs could have raised their procedural due process challenge in *Atkins,* their final argument likewise lacks merit.

### III. *The "As Applied" Attack*

The district court also held that, as applied, sections 5.05 and 5.07 of the 1983 amendments to the Texas Controlled Substances Act did not deprive the plaintiffs of their constitutional right to due process. In so holding, the district court focused on the length of the delay (or expected delay) between the date of the seizures and the date of the three forfeiture hearings, which was between one and two and a half years after the respective dates of the various seizures.

The seminal case on this issue is *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). The issue was whether a delay in a post-seizure hearing offended the Fifth Amendment right against deprivation of property without due process of law. In *$8,850,* the government waited eighteen months to file a civil proceeding for forfeiture of currency that a customs inspector seized from the claimant as she passed through customs. The claimant argued that the government's delay in filing violated her constitutional right to have a post-seizure hearing at a meaningful time.

The Supreme Court disagreed. Noting that "there is no obvious bright line dictating when a post-seizure hearing must occur," *id.* at 562, 103 S.Ct. at 2011, the Court declared that the balancing test applicable to Sixth Amendment speedy trial claims articulated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), provides an appropriate framework for determining when a post-seizure delay deprives a property owner of his right to due process. The *Barker* test "involves a weighing of four factors: length of delay, the reason for the delay, the [claimant's]

assertion of his right, and prejudice to the [claimant]." *$8,850, supra,* at 564, 103 S.Ct. at 2012.

Applying this test, the Court held the claimant was not denied due process because (i) while the delay was "quite significant," *id.,* (ii) the government offered substantial reasons to support it (e.g., diligent pursuit of a criminal proceeding), (iii) the claimant never requested a prompt hearing, and (iv) the claimant failed to show that the delay prejudiced her ability to defend against the forfeiture on the merits. *Id.* at 566–70, 103 S.Ct. at 2013–15.

■ The district court in this case applied the same four-part test that the Supreme Court applied in *$8,850.* In doing so, the district court found that in regard to each of the three forfeiture proceedings (i) the length of the delay—from one to two-and-one-half years—is quite significant; (ii) the record is silent on the reasons for the delay, so that responsibility for it cannot be attributed to either the government or the plaintiffs; (iii) the plaintiffs conceded at trial that they never sought a hearing in state court in any of the forfeiture proceedings; and (iv) the plaintiffs offered no proof at trial to show that the delays had in any way prejudiced their ability to defend themselves against the forfeitures. Relying on these findings, the district court concluded that none of the delays deprived the plaintiffs of due process.

We think the district court's ruling is correct. In fact, in our view the plaintiffs' due process argument in this case is weaker than the argument advanced by the claimant in *$8,850.* In *$8,850,* the government failed to file for a forfeiture for eighteen months. Here the government filed shortly after the seizures. Thus, had the plaintiffs in this case sought a prompt forfeiture hearing, presumably they could have obtained one. They have introduced no evidence to the contrary. By contrast, the claimant in *$8,850* could not have obtained a hearing for at least eighteen months, given the government's delay in filing. When this significant difference is combined with the fact that the plaintiffs here failed to show prejudice and failed to establish the government's responsibility for the delays, we cannot say that the delays alone amounted to a deprivation of due process or that the statute as applied was unconstitutional.

### IV.

In light of the foregoing, the district court's judgment dismissing the plaintiffs' suit is affirmed.

AFFIRMED.